IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**JESSIE T. CALDERWOOD,**

        **Plaintiff,**

vs.                                                                 No. CIV 02-0890 LCS

**JO ANNE B. BARNHART,**
**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing filed April 28, 2003 *(Doc. 11)*.  Defendant filed a Response on May 28, 2003 *(Doc. 13)* and Plaintiff filed her Reply on June 16, 2003 *(Doc. 15)*.  The parties have each consented to having the United States Magistrate Judge conducting all further proceedings in this matter pursuant to 28 U.S.C. § 636(c).  The United States Magistrate Judge, having considered the Motion, the Memorandum, the Response, the Reply, the administrative record, and the applicable law, and being otherwise fully advised, finds that Plaintiff's motion is not well-taken and should be **DENIED**.

### I.  BACKGROUND

Plaintiff applied for disability insurance benefits on January 13, 1999, alleging onset of disability on November 8, 1998.  R. 20-21.

Plaintiff had previously filed an application for disability insurance benefits under Title II of the Social Security Act on February 10, 1997, alleging disability from March 8, 1994. R. 96. This application was denied on initial review and upon reconsideration. *Id*. Plaintiff filed a request for hearing, and a hearing was held before an ALJ on July 7, 1998. *Id*. Plaintiff had also filed a previous application for disability insurance benefits on August 17, 1994. *Id*. The 1994 application was also denied on initial review and upon reconsideration. R. 96. An ALJ issued a an opinion denying Plaintiff's 1997 claim and declining to reopen Plaintiff's 1994 claim on November 7, 1998. R. 93-108.

The ALJ issued her decision on July 28, 2000, finding that Plaintiff was not disabled within the meaning of the Social Security Act. R. 20-25. In her decision, the ALJ noted that Plaintiff met the insured status requirements for entitlement to a period of disability and disability insurance benefits at the time she issued her decision. R. 21. The ALJ found that Plaintiff has not engaged in post-onset substantial gainful activity. *Id*. The ALJ found that Plaintiff has a "severe" impairment or combination of impairments consisting of fibromyalgia, chemical sensitivities, and arthritis. *Id*. The ALJ further found that Plaintiff's impairments did not meet or equal in severity any of the disorders described in the Listing of Impairments, 20 C.F.R. Part 4, subpt. P, app. 1. *Id*. The ALJ noted that Plaintiff had previously filed an application for a period of disability and disability insurance benefits which was denied by an ALJ on November 7, 1998, and which was not appealed by Plaintiff. *Id*. The ALJ declined to reopen or review that decision that Plaintiff was not disabled through the date of that decision. R. 21.

The ALJ found that she was unable to give credence to unsupported statements or opinions which were not supported by objective signs or findings. R. 22. The ALJ further found

that Plaintiff's testimony and other evidence did not credibly establish symptoms of functional limitations to the extent alleged. R.22-23.   The ALJ found that Plaintiff retained the residual functional capacity ("RFC") for a full range of light work activity.  R. 239.   The ALJ relied upon the testimony of the vocational expert ("VE") who identified jobs existing in significant numbers in the economy that were consistent with the Plaintiff's medical vocational profile.  *Id*. The ALJ accepted and adopted the opinions of the vocational witness and concluded that the Plaintiff was not disabled. R. 23, 25.

Plaintiff filed a Request for Review of Hearing Decision/Order on September 6, 2000. R. 12.  Plaintiff's representative also requested a cassette audiotape of the hearing before the ALJ, which the Appeals Council provided.  R. 10.  The Appeals Council provided Plaintiff an additional 30 days to submit any additional evidence or arguments.  *Id*.   The Appeals Council issued a decision on June 7, 2002, denying Plaintiff's request for review.  R. 5. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes.

On July 25, 2002, Plaintiff filed this action, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.   STANDARD OF REVIEW

This Court may only review the Commissioner's decision to determine whether it is supported by substantial evidence and whether correct legal standards were applied. *See Shepherd v. Apfel,* 184 F.3d 1196, 1199 (10th Cir. 1999);  *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Soliz v. Chater*, 82 F.3d 373, 375 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Court may "neither reweigh the evidence

nor substitute [its] judgment for that of the Commissioner." *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). A decision by an ALJ is not supported by substantial evidence if the evidence supporting the decision is overwhelmed by other evidence on the record. *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

In order to qualify for disability insurance benefits or supplemental security income, a plaintiff must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the plaintiff from engaging in substantial gainful activity. *Thompson*, 987 F. 2d at 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423 (d)(1)(A)). At the first four levels of the sequential evaluation process, the plaintiff must show that he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the plaintiff is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id.*

### III.  ANALYSIS

Plaintiff alleges that the ALJ erred (1) in finding that she can perform a full range of light work; (2) by relying upon the testimony of the VE that she can perform the jobs of coin machine collecting and surveillance systems monitor; and (3) in finding that Plaintiff's mental impairment is not severe.

A.      **Whether the ALJ erred in finding that Plaintiff can perform a full range of light work**

Plaintiff argues that the ALJ erred in finding that she retains the residual functional capacity to perform a full range of light work.  However, the ALJ's finding is supported by substantial evidence in the record.

At the hearing, Plaintiff testified that she does the household maintenance and cleans and washes.  R. 42.  She testified that she spends the day doing housework, and watches television in the evenings.  R. 42.   Plaintiff testified that she goes into the forest, maintains her driver's license and drives about twice a month. R. 43.  Plaintiff testified that she does her own cooking and dusts.  R. 75.  Plaintiff testified that her condition has not changed since her previous application was denied. R. 46.   Plaintiff also testified that  her doctors have encouraged her to exercise.  R. 78.  Plaintiff indicated that she likes to read health books and books on homeopathic medicine.  R. 79.

In addition to Plaintiff's testimony about her activities, Paula Hughson, M.D., a consultative examiner ("CE") who examined Plaintiff in 1997 noted that Plaintiff was not taking medication at the time of her exam, Plaintiff's sleep and appetite were good, and Plaintiff indicated that she could perform all household activities.  R. 215.  Plaintiff had indicated to Dr. Hughson that her activities were curtailed, however, because of her perceived chemical sensitivities.  *Id*.  Gwen Sun, M.D., another CE noted "There essentially has been no disease detected in this particular claimant, and we have reveled [sic] and not found any signs of reactive airways disease or seasonal allergies and/or other hypersensitivity conditions at this time. Therefore, from a physical standpoint, we have failed to detect any significant limitations." R.

5

220. Dr. Sun concluded that "this patient has full capacity, at this point, to do her usual lifelong employment and we have not found any limitations from a mental or physical standpoint."  R. 221.

G.T. Davis, M.D., conducted another consultative examine on April 26, 1999. R. 194-196. Dr. Davis noted that Plaintiff's gait was normal, her balance was good, she could take some steps on her toes and heels and she could squat down halfway, although she reported some discomfort when doing so. R. 194. Dr. Davis noted that Plaintiff had good mobility in her shoulders, elbows, wrists and digits, although there was some puffiness and heat at both medial elbow joints, as well as some tenderness of the MP joints of the index and middle fingers on both hands. *Id*. Dr. Davis noted that Plaintiff could make a good fist, and her motor, sensory, and reflex functions were otherwise normal in the upper extremities and there were no rashes. *Id*. With regard to Plaintiff's lower extremities, Dr. Davis noted that she had good motions of the hips, knees, and ankles. R. 194. Dr. Davis concluded that although Plaintiff had some rheumatologic signs of joint involvement, he noted no objective neurological problems that would limit her activities. *Id*. As a result of the noted rheumatologic problems, Dr. Davis noted "some restrictions from heavier or more strenuous types of activities or sustained activities." R. 195.

A Physical Residual Functional Capacity Assessment completed by Melvin Golish, M.D., a non-examining physician, concluded that Plaintiff could occasionally lift 20 pounds; could frequently lift 10 pounds; could stand and/or walk about 6 hours in an 8-hour workday; could sit for about 6 hours in an 8-hour workday, and had no limitations on pushing or pulling. R. 201. Dr. Golish noted occasional structural limitations; no manipulative, communicative, or visual limitations, and environmental limitations including avoiding concentrated exposure to hazards

and avoiding even moderate exposure to fumes, odors, dusts, cases, poor ventilation, etc. R. 203-204.  Donald B. Steward, M.D., another non-examining physician, concurred with Dr. Golish's assessment.  R. 207.

Leslie W. Janis, M.D., who saw Plaintiff in January 2000 and who no longer had contact with Plaintiff by March 2000, indicated that Plaintiff's ability to lift and carry were not affected by her impairment, that standing and walking were limited by Plaintiff's perception of fatigue, that sitting was not limited and that Plaintiff had environmental limitations to dust, fumes and chemicals related to Plaintiff's perception of chemical sensitivities.  R. 226-27  Moreover, Dr. Janis noted that based on Plaintiff's history and not based upon any objective or medical findings, Plaintiff requires complete freedom to rest frequently without restriction.  R. 233.   Given that Dr. Janis noted that his observations were based upon Plaintiff's history and subjective complaints, and were not based upon any objective or medical findings, the ALJ correctly noted that such observations could be given little weight.  *See* 20 C.F.R. § 404.1527.

Plaintiff submitted forms completed by Ralph J. Luciani, D.O., which opine that Plaintiff has significant limitations on her ability to work.  R. 241-242.  It is well settled that "[a]n ALJ is required to give controlling weight to a treating physician's opinion about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and any physical or mental restrictions, if 'it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.'" *Bean v. Chater*, 77. F.3d 1210, 1214 (10th Cir. 1995).  In completing a questionnaire, Dr. Luciani opined that Plaintiff suffers from a multiple chemical sensitivity disorder which could be reasonably expected to produce a significant disabling degree of fatigue.  R. 251. Dr. Luciani also opinion that Plaintiff suffers from

7

moderately severe fatigue which serious affects her ability to function. R. 252. However, Dr. Luciani's opinion and conclusions as to Plaintiff's ability to work are not supported by objective medical tests, nor by his sparse progress notes. R. 241-46. In addition, as the ALJ noted, Dr. Luciani is not identified as a treating source, there is no evidence of his qualifications as a medical practitioner, there is no evidence that Dr. Luciani actually examined or evaluated Plaintiff, and there are no clinical signs or medical findings from him, against which his opinions may be compared. R. 22. The ALJ thus properly discounted the weight given to Dr. Luciani's opinions.

A review of the record indicates that the ALJ's opinion that Plaintiff retains the residual functional capacity to perform a full range of light work is supported by substantial evidence, including the findings of the various consultative examiners and the non-examining physicians. The ALJ thus did not err in finding that Plaintiff retains the residual functional capacity to perform a full range of light work.

**B.     Whether the ALJ erred in relying upon the testimony of the VE that Plaintiff can perform the jobs of coin machine collector and surveillance systems monitor**

Plaintiff further alleges that the ALJ erred in relying upon the testimony of the VE that Plaintiff can perform the jobs of coin machine collector and surveillance systems monitor because the job of surveillance systems monitor is classified as sedentary under the Dictionary of Occupational Titles.

The VE testified Plaintiff's past work in aircraft assembly was medium and skilled, and her past work as a janitor was medium and semi-skilled. R. 81. The VE testified that unskilled occupations that would allow variation of sitting, walking and standing existed which a person with Plaintiff's vocational profile could perform. R. 83. The VE identified three jobs: sedentary

cashier, a sedentary unskilled job with 600,000 national and 60,000 in the region; surveillance system monitor, sedentary and unskilled, 50,000 national and 4,000 jobs in the region; coin machine collector, a light, unskilled job, with 50,000 national and 2,500 jobs in the region.  R. 84.  However, once a chemical sensitivity to perfumes was incorporated in the hypothetical, the VE indicated that sedentary cashier would not be a possible job.  R. 84-85.

Plaintiff apparently argues that since the surveillance systems monitor job is actually sedentary, it cannot be used as evidence by the ALJ to show that jobs exist in the economy that Plaintiff can perform.  Nevertheless, pursuant to 20 C.F.R. § 404.1467(b), "[i]f someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." Although the ALJ posed a hypothetical to the VE which incorporated an exertional limitation requiring the ability to sit and stand, the ALJ did not find that Plaintiff had any such limitation.  R. 24.  In any case, the VE also identified the job of coin machine collector.

Plaintiff argues that in asking the VE to incorporate into the hypothetical the need to sit or stand at will, the ALJ contradicted the meaning of being able to perform light work on a sustained basis. However, the ALJ need only accept the testimony of the VE insofar as it incorporates the limitations which he accepts. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000).  The ALJ found that Plaintiff was limited to lifting and carrying weights of no more than 20 pounds at a time, and no more than 10 pounds frequently. R. 23.  The ALJ found that Plaintiff was able stand and/or walk for two hour intervals and for up to six hours during an eight-hour day.  *Id*.  There is nothing in the testimony from the VE to indicate that a person with the limitations accepted by the ALJ could not perform the job of coin machine collector.  R. 15-17.

The identification of the coin machine collector does not conflict with the light work classification, nor with the limitations accepted by the ALJ. The identification of such job is sufficient to support the determination by the ALJ. Plaintiff argues that this job does not exist in sufficient numbers to support the ALJ's determination. However, pursuant to 20 C.F.R. § 416.966, the Commissioner will "consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country. It does not matter whether (1) Work exists in the immediate area in which you live; (2) A specific job vacancy exists for you; or (3) You would be hired if you applied for work." Although at the time of the hearing, the ALJ posed hypotheticals to the VE which included various exertional limitations, the ALJ ultimately concluded that Plaintiff retained the residual functional capacity to perform the full range of light work. R. 24. The although the second job identified by the VE, surveillance systems monitor, is a sedentary job, pursuant to applicable regulations, Plaintiff is presumed able to perform such jobs as well, given that the ALJ did not find that Plaintiff has the inability to sit for long periods of time or problems with dexterity, and given the fact that the VE testified that the surveillance systems monitor could be performed with a sit-stand option. R. 24 and 83, 20 C.F.R. § 404.1567. The ALJ determination that a job exists that Plaintiff could perform in the regional and national economy is thus supported by substantial evidence.

**C.     Whether the ALJ erred in finding that Plaintiff's mental impairment was not "severe"**

Pursuant to the applicable regulations, "[a] medically determinable impairment or combination of impairments is severe if it significantly limits an individual's physical or mental

ability to do basic work activities." 20 C.F.R. § 404.1521. If a severe impairment exists, all medically determinable impairments must be considered in the remaining steps of the sequential analysis. 20 C.F.R. § 404.1523. The ALJ found that Plaintiff had an impairment or combination of impairments considered "severe" pursuant to 20 C.F.R. § 404.1520(b). R.21.

Plaintiff claims that the ALJ should have found that her mental impairment was "severe" pursuant to 20 C.F.R. § 404.1520a (b)(d). However, as the ALJ noted there is no evidence in the record since the denial of Plaintiff's previous claim to indicate the presence of a severe mental impairment. R. 23. Plaintiff has neither sought nor received psychiatric or psychological treatment. *Id.*

The determination of severity at step two of the analysis is governed by the applicable severity regulations. *See Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). At step two, the ALJ is to determine whether the claimant has an "impairment or combination of impairments which significantly limits [her] . . . ability to do basic work activities." *Hinkle v. Apfel,* 132 F.3d 1349, 1353 (10th Cir. 1997) (citing 20 C.F.R. § 404.1520(c)). This determination is based on medical factors alone, and does not include consideration of vocational factors such as age, education, and work experience. *Williams*, 844 F.2d at 750-51. Pursuant to the severity regulations, the claimant must make a threshold showing that his medically determinable impairment or combination of impairments significantly limits his ability to do basic work activities. *Id*. While the Tenth Circuit has noted that the step 2 severity determination requires a "de minimis" showing of impairment, the claimant must show more than the mere presence of a condition or ailment. *See Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997)(citing *Williams*, 844 F.2d at 751); *see also Hinkle* 132 F.3d at 1352 (citing *Bowen v.*

11

*Yuckert*, 482 U.S. 137, 153 (1987)).  If a claimant is unable to show that her impairments would have more than a minimal effect on her ability to do basic work activities, she is not eligible for disability benefits.  *Williams,* 844 F.2d at 751.  If, on the other hand, the claimant presents medical evidence and makes the de minimis showing of medical severity, the decision maker proceeds to step three. *Id*.  As such at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on the claimant's ability to work.  *Hinkle*, 132 F.3d at 1352.

In the instant matter, there is nothing in the record to suggest that Plaintiff's claimed mental impairment reaches even the de minimis showing of medical severity.  As the ALJ noted, "There is no new evidence contradicting the previous decision that this was not a severe impairment. She has not sought psychiatric or psychological help, and the only evidence of any emotional problem is in the cursory progress notes of Dr. Luciani indicating that Zoloft[1] was being prescribed." R. 23.  In addition, the notes of Dr. Janis evaluating Plaintiff's mental functions indicate that such notes are based upon conversation and telephone contacts with Plaintiff, and not upon any medical or objective evidence.  R. 228-233.

Plaintiff claims that the ALJ failed to develop the record and should have ordered a CE to determine the severity of her claimed mental impairment.  The burden to prove disability in a social security case is on the Plaintiff. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).

---

[1] Zoloft© or sertraline is in a class of drugs called selective serotonin reuptake inhibitors. Sertraline affects chemicals in the brain that may become unbalanced and cause depression, panic or anxiety, obsessive or compulsive symptoms, or other psychiatric symptoms. Sertraline is used to treat depression, obsessive-compulsive disorder, panic disorder, posttraumatic stress disorder (PTSD), and premenstrual dysphoric disorder (PMDD). WebMd *at* http://my.webmd.com/content/drugs/3/4046_2178.htm?lastselectedguid={5FE84E90-BC77-4056-A91C-9531713CA348}(August 8, 2003).

However, because a Social Security disability hearing is a nonadversarial proceeding, the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360-361 (10th Cir. 1993). As such, "an ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996). The degree of effort required by the ALJ to develop the record varies from case to case. Cf. *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994) (noting that whether ALJ has adequately developed record must be determined on case by case basis); *Lashley v. Secretary of Health & Human Servs.*, 708 F.2d 1048, 1052 (6th Cir. 1983).

     The plaintiff, nevertheless, "has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists. When the plaintiff has satisfied his or her burden in that regard, it then, and only then, becomes the responsibility of the ALJ to order a consultative exam. *Hawkins v. Chater*, 113 F.3d at 1166-67. The ALJ is not required to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning. *Hawkins*, 113 F.3d at 1168 (citing generally, *Glass v. Shalala*, 43 F.3d 1392, 1396 (10th Cir. 1994)). The applicable standard is that "of reasonable good judgment. The duty to develop the record is limited to 'fully and fairly developing the record as to material issues.'" *Hawkins*, 113 F.3d at 1168 (citing *Baca v. Department of Health & Human Servs.*, 5 F.3d 476, 479-80 (10th Cir. 1993)). In the instant matter, the ALJ correctly noted the lack of evidence in the record to suggest that Plaintiff suffers from a severe mental impairment. The record contains no information regarding any kind of treatment or any objective evidence regarding a severe

13

mental impairment, since the last unfavorable decision of the Commissioner. Because the Plaintiff has failed to meet this burden, the ALJ did not err in failing to order a consultative exam. *Hawkins*, 113 F.3d at 1168 (internal citation omitted). The ALJ exercised the "reasonable good judgment" required and the burden to "fully and fairly developing the record as to material issues'" *Hawkins*, 113 F.3d at 1168 (citing *Baca*, 5 F.3d at 479-80. The ALJ did not err in finding that Plaintiff did not suffer from a severe mental impairment.

### IV.   CONCLUSION

I find that Plaintiff's Motion to Reverse and Remand for a Rehearing filed April 28, 2003 *(Doc. 11)* is not well-taken and should be **DENIED**, that the Commissioner's decision be **AFFIRMED**, and that this action be **DISMISSED**.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing filed April 28, 2003 *(Doc. 11)* is **DENIED.**

**IT IS FURTHER ORDERED** that this matter be **DISMISSED WITH PREJUDICE.**

A Judgment in accordance with this Memorandum Opinion and Order shall be entered forthwith.

**IT IS SO ORDERED.**

　
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**